# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# CENTRAL DIVISION

**MICHAEL ANDREW JOHNSON**  **PLAINTIFF**
**ADC #110504**

V.              NO. 4:21-cv-00488-LPR-ERE

**DEXTER PAYNE,** *et al.*              **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.    Procedures for Filing Objections:**

This Recommendation has been sent to United States District Lee P. Rudofsky. Any party may file objections if they disagree with the findings or conclusions set out in the Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record.

**II.   Background:**

On June 3, 2021, Plaintiff Michael Andrew Johnson, an Arkansas Division of Correction ("ADC") inmate, filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983. *Doc. 2.* Mr. Johnson alleges that Defendants Dexter Payne, William Straughn,

Benny Magness, Jared Byers, Claudia Harris, Jeffery Dean, James Shipman, Shelby Houston, Andy Shock, and Wendy Kelley have acted with deliberate indifference to his safety by allowing him to remain housed at the Maximum Security Unit ("MSU"), where many of the inmates on his enemy alert list are also housed. He explains that, after he was the victim of an inmate attack at the Wrightsville Unit in November 2018, he fears for his safety and complains that Defendants aren't doing enough to keep him safe.

Mr. Johnson sues each defendant in his or her official and individual capacities. By way of relief, he seeks: (1) monetary damages; and (2) assignment to protective custody at an ADC unit where inmates on his enemy alert list are not housed.

Pending before the Court are:(1) Mr. Johnson's motion for summary judgment (*Doc. 156*); (2) Defendants' combined motion for summary judgment and response in opposition to Mr. Johnson's motion for summary judgment, supporting brief, and statement of facts (*Docs. 169, 170. 171*); and (3) Mr. Johnson's responses.[1] *Docs. 173, 174*.

---

[1] Mr. Johnson recently filed "new evidence" showing that pursuant to ADC policy, his assignment to a single-man cell in restrictive housing prevents him from obtaining classification necessary for release from custody. *Doc. 178*. However, Mr. Johnson's safety, not his release from custody, is at issue in this lawsuit. Thus, this "new evidence" does not impact the Court's summary judgment analysis.

As explained below, the Court recommends that Defendants' motion for summary judgment be granted and Mr. Johnson's motion for summary judgment be denied.

## III. Discussion:

### A. Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See Fed. R. Civ. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence shows that there is no genuine dispute about any fact important to the outcome of the case. See Fed. R. Civ. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**B.     Factual Background**[2]

In November 2018, Hayden Geels stabbed Mr. Johnson while both inmates were housed at the Wrightsville Unit. *Doc. 22-1 at 1*; *Doc. 169-2 at 1*. Since July 2020, Mr. Johnson has resided in a single-man cell at the MSU.[3] *Doc. 169-3 at 1*.

In support of their motion for summary judgment, Defendants present the declaration of the Warden of MSU, Defendant James Shipman, who incorporates his previously filed declarations. *Docs. 22-1, 22-2, 169-1*. Together, Defendant Shipman's declarations provide the following, undisputed facts: (1) because of security risks, almost all MSU inmates are housed in single-man cells (*Doc. 22-1 at 1*); (2) MSU inmates housed in single-man cells have no contact with other inmates and remain locked down at all times, other than when they shower or go to yard call, the unit infirmary, or classification *(Id. at 2)*; (3) when an inmate is removed from his cell, two correctional officers must be present, and the inmate is then escorted in hand cuffs, with an officer on each side *(Id. at 1)*; (4) when out of his cell, Mr. Johnson is never without the supervision and protection of two correctional officers;

---

[2] These facts are taken from Defendants' statement of undisputed facts (*Doc. 171*), which Mr. Johnson has failed to contest with a responsive statement of facts, as required under Local Rule 56.1, or countervailing evidence.

[3] The Warden of MSU, Defendant James Shipman, reports that upon Mr. Johnson's admission to MSU on July 20, 2020, he was assigned to restrictive housing, which requires a one-man cell. *Doc. 22-1 at 1*. Defendant Shipman states that in September 2021, ADC officials found Mr. Johnson guilty of a disciplinary violation and assigned him to punitive housing, which also requires a single-man cell. *Id. at 3*.

(5) inmate Geels is on Mr. Johnson's enemy alert list and housed at the Ouachita Regional Correctional Unit *(Id. at 2)*;[4] (6) because inmate Geels and Mr. Johnson are on each other's enemy alert lists, they will never be housed at the same ADC unit (*Id.*); and (7) Mr. Johnson will remain housed in a single-man cell as long as any inmate on his enemy alert list is housed at the MSU. *Doc. 169-1 at 1*.

Defendants also provide the declaration of ADC Assistant Medical Services Manager Shelly Byers, who reviewed Mr. Johnson's medical records, and reports that there is no indication that he has been involved in a physical altercation since November 2018. *Doc. 169-2 at 1-2*.

Finally, Defendants provide the declaration of the Director of the ADC, Defendant Dexter Payne, who reviewed Mr. Johnson's institutional records and states: "The MSU is one of the saf[est] units in the ADC[,] and Johnson's records do not reflect that he has been involved in any altercations with an inmate while housed at the MSU." *Doc. 169-3 at 1-2*. Defendant Payne explains that the ADC follows an offender separation policy and mandated procedures that "provide a system to identify those inmates who are known enemies so that appropriate security precautions can be taken." *Id. at 2* (quoting *Doc. 169-4* (ADC Administrative Directive on Offender Separation)). Defendant Payne reports: "I have reviewed

---

[4] Mr. Johnson specifically states that he does not dispute that ADC officials have separated him from inmate Geels. *Doc. 173 at 4*.

Inmate Johnson's Offender Separation List; and in my judgment, appropriate security precautions are being taken with respect to Inmate Johnson." *Id*.

### D. Analysis

#### 1. Sovereign Immunity

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Mr. Johnson's claims against Defendants for money damages in their official capacity are barred by sovereign immunity.

#### 2. Eighth Amendment Claim[5]

A correctional official "violates the Eighth Amendment if he is deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998). "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." *Curry v. Crist*, 226 F.3d 974, 977 (8th Cir.

---

[5] Defendants argue that they are entitled to qualified immunity, which protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine of qualified immunity does not apply to Mr. Johnson's claim for injunctive relief. *Grantham v. Trickey*, 21 F.3d 289, 295 (8th Cir. 1994). However, because the facts, viewed in a light most favorable to Mr. Johnson, fail to demonstrate the deprivation of a constitutional right, Defendants are entitled to qualified immunity on Mr. Johnson's claims for money damages.

2000). To be liable, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

The objective component of an Eighth Amendment tests whether, viewed objectively, the alleged deprivation is sufficiently serious. The inquiry "is contextual and responsive to 'contemporary standards of decency.'" *Hudson v. McMillian*, 503 U.S. 1, 2 (1992) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). In the context of inmate protection, such standards are violated when a prison official fails to take "reasonable measures to guarantee the safety of inmates." *Irving v. Dormire*, 519 F.3d 441, 447 (8th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). Only extreme conditions that deprive an inmate "the minimal civilized measure of life's necessities" violate the Eighth Amendment. *Farmer*, 511 U.S. at 845.

In an effort to show that his housing assignment subjects him to a substantial risk of serious harm, Mr. Johnson alleges that: (1) unidentified ADC officials have failed to address his "well[-]documented enemy alert [list, which includes] a persuasive hit order on [his] life" (*Doc. 156 at 1; Doc. 173 at 1-2*); (2) unidentified ADC officials tried to force him to move to MSU's general population, where four of his enemies reside (*Id.*); (3) Defendants have "deliberately acted with evil intent to [his] health and safety" (*Doc. 156 at 2*); (4) from June 21 through July 21, 2022, inmate Jackson threatened him (*Doc. 173 at 5*); (5) Aryan gang leader Nick Cox "is

in the hole for putting a hit on [his] life through the mail" (*Id.*); and (6) his food has been poisoned "with dope" three times. *Id.*

Mr. Johnson also presents grievance papers indicating that, on April 3, 2022, an inmate barber listed on his enemy alert list entered his barracks. *Doc. 156 at 4*. However, video footage showed that the inmate barber never approached Mr. Johnson's cell, and once ADC staff discovered that the inmate was on Mr. Johnson's enemy separation list, they removed him from the barracks, without incident. *Id.* Furthermore, the inmate in question is no longer assigned as the inmate barber in Mr. Johnson's housing area. *Id.*

Mr. Johnson's unsubstantiated allegations are insufficient to create a material issue of disputed fact. See *Scott v. Harris*, 550 U.S. 372, 380-81 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); see also *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007) ("Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment."). Even assuming that Mr. Johnson's allegations regarding recent events are true, he fails to provide relevant information including: (1) how inmates Jackson or Cox threatened him or where these inmates are housed; and (2) the identification of inmates who

allegedly poisoned his food or any other pertinent details. Furthermore, it is undisputed that Mr. Johnson has not been involved in a physical altercation with another inmate since his transfer to MSU.

Based on the evidence presented, no reasonable fact finder could conclude that Mr. Johnson's current confinement in a one-man cell in restrictive housing creates a substantial risk of serious harm to his safety. The record shows that ADC officials have taken reasonable measures, arguably everything possible, to protect Mr. Johnson from harm. Mr. Johnson's vague allegations and general fear for his safety fail to present issues for trial. See *Jones v. Wallace*, 641 Fed. Appx. 665 (8th Cir. 2016) (unpublished) (a general fear of another inmate is not sufficient to put guards on notice of a specific threat or danger).

To prevail under the subjective prong of his claim, Mr. Johnson must show that Defendants acted with a "highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (quoting *Choate v. Lockhart*, 7 F.3d, 1370, 1374 (8th Cir. 1993)). "Deliberate indifference is equivalent to criminal-law recklessness, which is 'more blameworthy than negligence,' yet less blameworthy than purposefully causing or knowingly bringing about a substantial risk of serious harm to the inmate." *Schaub v. VonWald*, 638 F.3d 905, 914–15 (8th Cir. 2011) (quoting *Farmer,* 511 U.S. at 835).

Even if a reasonable factfinder *could* conclude that Mr. Johnson's current confinement creates a substantial risk of harm to his health and safety, which is not the case, he has failed to come forward with any evidence that Defendants intentionally disregarded such risk. He presents no evidence that he notified a named Defendant that he has recently been threatened or that individuals have tampered with his food. In addition, based on Mr. Johnson's grievance papers, when ADC officials learned that an inmate on his enemy alert list had entered his barracks, they immediately addressed the situation. *Doc. 156 at 4*. Such conduct can hardly be categorized as criminally reckless.

Mr. Johnson has failed to present credible evidence that Defendants are aware that his continued assignment to a one-man cell in restrictive housing at the MSU creates any significant risk of harm to his safety. Nor is there any evidence to suggest that Defendants have disregarded any serious risk of harm to Mr. Johnson.[6]

Accordingly, Defendants are entitled to judgment as a matter of law.

---

[6] In addition, the undisputed record shows that: (1) Defendant Kelly, former Director of the ADC, resigned from the ADC in July 2020; and (2) Defendant Amy Shock. an Arkansas Parole Board member, and Defendant Benny Magness, Chairman of the Arkansas Board of Correction, have no "authority or responsibility for institutional housing placement of ADC inmates." *Doc. 169-3 at 2*.

## IV. Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 169*) be GRANTED, and judgment be entered in favor of Defendants.

2. Mr. Johnson's motion for summary judgment (*Doc. 156*) be DENIED.

3. The Clerk be instructed to close this case.

Dated this 6th day of September, 2022.

_____
UNITED STATES MAGISTRATE JUDGE